*459 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
|, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joseph W. Bailey, an attorney licensed to practice law in Louisiana and Texas. In 2010, we imposed a fully deferred six-year suspension upon respondent based on discipline imposed by the State Bar of Texas for his failure to safeguard client funds in a matter unrelated to the instant matter. In re: Bailey, 10-0426 (La.5/7/10), 41 So.3d 436 (hereinafter referred to as “Bailey I ”).
UNDERLYING FACTS
By way of background, in 1991, Royce Morris suffered severe head trauma in a gas pipeline explosion, resulting in permanent disabilities, including seizures, post-traumatic stress disorder, impulse control issues, and anger issues. A class action lawsuit against the pipeline company resulted in a settlement of more than $2,000,000 for Mr. Morris in December 1999.
Soon thereafter, Mr. Morris hired respondent to provide him with estate and tax planning services, and they signed a retainer agreement to that effect on December 28,1999. Respondent assisted Mr. Morris in setting up an irrevocable trust to receive and manage the settlement funds.[1] On December 30, 1999, Mr. |2Morris signed a trust agreement creating the Royce Morris Irrevocable Trust (“the trust”) and naming the Trust Company of Louisiana, through Patrick Nelson, as the trustee. The trust agreement also named respondent as the attorney for the trust, to be compensated pursuant to the December 28,1999 retainer agreement.[2]
Pursuant to the retainer agreement, respondent received a $10,000 retainer fee to be billed at the rate of $150 per hour. By the end of February 2000, respondent had billed Mr. Morris a total of $9,255, and requested an additional $5,000 retainer from the trustee. In June 2000, respondent informed the trustee that he had also begun to represent Mr. Morris in criminal matters.
On August 25, 2000, the Trust Company of Louisiana resigned as the trustee due to hostility between Mr. Nelson and Mr. Morris.[3] Respondent’s wife, Judith Bailey, who worked in respondent’s law office performing administrative and paralegal *460 duties, was appointed as the successor trustee.
During this same time period, Mr. Morris’ mother initiated judicial commitment proceedings against him based on his drug problems. Respondent was not involved in representing Mr. Morris in these proceedings, but he knew of the proceedings when he requested that the judge appoint Mrs. Bailey as the successor trustee.
|sAfter Mrs. Bailey became trustee, respondent defended Mr. Morris against numerous criminal charges. On January 13, 2003, respondent resigned as attorney for the trust.[4] Nevertheless, Mrs. Bailey continued to make payments from the trust to respondent for work not performed. Additionally, Mrs. Bailey also breached her trustee duties as follows:
1. She allowed Mr. Morris’ vehicle insurance to lapse numerous times for nonpayment of premiums, thus incurring late fees and other penalties;
2. She failed to pay property taxes on property owned by the trust;
3. She failed to maintain insurance on immovable property owned by the trust;
4. She failed to file tax returns on behalf of the trust as required by law, incurring interest, penalties, and a tax levy;
5. She failed to pay bills timely, incurring numerous late charges and/or penalties;
6. She failed to provide annual and quarterly accountings as required by law and the trust agreement;
7. She failed to open mail containing important insurance information for the trust;
8. She paid huge amounts of money out of the trust for bar tabs and cash loans for Mr. Morris;
9. She made excessive distributions of income and principal to Mr. Morris despite knowing of Mr. Morris’ illegal substance (crystal methamphetamine and cocaine) abuse problems; and
|410. She failed to take into account the long term interest of Mr. Morris in connection with the administration, management of assets, distribution of assets, and termination of the trust.
In March 2006, Mrs. Bailey formally withdrew as trustee and informed Mr. Morris that the trust funds had been depleted. When Mrs. Bailey failed to respond to Mr. Morris’ requests for an accounting, he obtained new counsel and filed a petition for an accounting on January 24, 2007. Mrs. Bailey did not render the accounting until April 16, 2007.
On July 31, 2007, Mr. Morris, through his new attorney, filed a petition for damages against respondent and Mrs. Bailey. The lawsuit alleged that Mrs. Bailey breached her fiduciary duties to Mr. Morris and breached the trust agreement. The lawsuit also alleged legal malpractice and overbilling by respondent.
On February 12, 2009, after a two-day trial, the judge found that Mrs. Bailey violated multiple sections of the trust agreement and the trust code, stating:
The evidence is undisputed that between August 25, 2000 and March 2006 the Trust was drained to the point of becoming insolvent. It is important to note that during this entire time Mr. and Mrs. Bailey worked in the same law *461 office ... [T]he Court believes that in addition to serving as Trustee in this matter she had a number of other administrative and paralegal duties, in the Bailey law office, including billing for her husband. She therefore knew well of Royce Morris’ drug arrests and convictions, serious alcohol abuse, and other legal matters handled by Mr. Bailey.
Regarding Mr. Morris’ mental state, the judge indicated that,
[although not interdicted, Royce has been disabled and judgment-impaired since the 1991 accident; he has seizures; he suffers from post traumatic stress disorder and has what has been described as an uncontrollable temper. He is not employable and is permanent ly disabled. Moreover, it is clear from the evidence and his in-court testimony that he is permanently judgment impaired and unable to make reasoned decisions about his finances or general welfare. The testimony and evidence reveals that the Baileys have taken different positions at different times regarding the competence Rlevel of Royce Morris. On the one hand, Joseph Bailey seemed to suggest in court testimony that there should not be a trust because (1) Royce was never interdicted; (2) Royce was not otherwise judicially declared incompetent; and (8) there was no court order in the class action matter requiring a trust. Yet, on the other hand, he assisted in the preparation of the 12/30/99 Trust Agreement and his wife, Judith, signed as a witness. Further, in a June 19, 2000 letter to John Madison [attorney for the Trust Company of Louisiana], Mr. Bailey wrote of Morris’ “diminished capacity” and in his October 21, 2001 Motion For Appointment of Sanity Commission [filed in one of Mr. Morris’ criminal cases], Joe Bailey wrote that Morris was “unable to assist in his defense” and that a psychiatrist should be appointed “to determine mental capacity.”
Additionally, the judge stated that, for all of her acts of negligence and misconduct, Mrs. Bailey paid herself a sizable fee, three to four times the amount charged by the Trust Company of Louisiana, without any written authorization from Mr. Morris. Given the circumstances, the judge concluded that, “the huge problem with all of this is that there are no checks and balances on either Mr. or Mrs. Bailey, who are married to each other and work in tandem in the Bailey law office.”
With respect to the allegations of legal malpractice and overbilling against respondent, the judge found the following:
1) While serving as legal representative for the trust, respondent recommended that Judith Bailey, his wife and an agent of his law firm, be appointed as trustee. Respondent created the climate for self-dealing and multiple conflicts without any checks and balances. Moreover, because there was no CPA involved in the preparation of state and federal income tax returns and because no accounting was ever rendered, there was no way for Mr. Morris to have knowledge of any financial issues;
|fi2) Respondent failed to disclose to Mr. Morris any information regarding the fees to be charged to the trust for Mrs. Bailey’s services as trustee;
3) Respondent represented to Mr. Morris that he was no longer representing the trust. Yet he continued to represent and bill the trust, including for conversations with his wife about trust matters, mailing items, etc.;
4) Payments were made to respondent’s personal credit card account out of the trust account. While some were legitimate reimbursements, some *462 were not. In fact, respondent and Mrs. Bailey only produced documentation showing proof of reimbursement on two payments on the personal credit card; and
5) The trust appears to have been charged for services not performed by respondent.
On May 11, 2009, the judge rendered judgment against respondent and Mrs. Bailey, in solido, in the total amount of $226,545. The judge also rendered an additional judgment against respondent in the amount of $16,131.55.
Respondent and Mrs. Bailey did not appeal the judgment. Instead, respondent and Mrs. Bailey jointly filed for bankruptcy protection and sought to discharge Mr. Morris’ judgment against them. However, by judgment dated June 23, 2010, the bankruptcy judge ruled that Mr. Morris’ judgment was non-dischargeable on the grounds that the claim resulted from “ ‘defalcation while acting in a fiduciary capacity’ under 11 U.S.C. § 523(a)(4).”
DISCIPLINARY PROCEEDINGS
In September 2011, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5 (fee arrangements), 1.7 (conflict of | interest), 1.15 (safekeeping property of clients or third persons), 5.3 (failure to properly supervise a non-lawyer assistant),[5] and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the formal charges, denying any misconduct. This matter then proceeding to a formal hearing on the merits, conducted by the hearing committee in March 2012.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
Mr. Morris, severely injured in an accident, had a trust set up due to his inability to manage his settlement proceeds. His pride and injuries caused him to engage in a destructive course, and he hired respondent to break the trust. Respondent had his wife appointed trustee. Thereafter, respondent represented the conflicting interests of the trust and Mr. Morris. He also intermingled his own finances with those of Mr. Morris, so that, over the course of six years, the trust was entirely depleted. Mr. Morris attempted to obtain an accounting and to recover from respondent and his wife for excessive billing, malpractice, and damages. He obtained a favorable judgment against them but, nevertheless, died destitute.
The committee determined that most of the witnesses, except respondent, were credible. The committee did not make a specific credibility determination regarding Mrs. Bailey.
With respect to respondent, the committee determined he does not seem to grasp that the trust is a separate legal entity from Mr. Morris. Respondent refused 18to acknowledge even the potential for a conflict. Furthermore, while he was having Mrs. Bailey appointed as the trustee, he *463 did not disclose to the judge that Mr. Morris was in the process of being judicially committed. Mrs. Bailey worked at respondent’s office during all pertinent times, and his attempt to parse words by claiming that she was not a paid employee seemed very disingenuous to the committee. Respondent maintained that the lack of documentation, including the failure to file annual accountings, was due to Mr. Morris’ wish that he did not want to leave a paper trail. Respondent also showed no remorse and, at one point, blamed this matter on Mr. Morris’ mother. Respondent’s testimony made it clear that, if Mr. Morris were ever denied a disbursement, the Baileys might lose control over the trust.
With respect to Mrs. Bailey, the committee determined that she wrote checks to or for Mr. Morris almost daily. She also disbursed the trust funds to Mr. Morris and various creditors, including respondent, pursuant to what she claimed were Mr. Morris’ wishes.
Based on these findings, the committee then determined that respondent violated the Rules of Professional Conduct as follows: He violated Rule 1.5 by charging excessive fees for estate and tax planning when he admitted doing little work on either. He charged excessive fees for criminal defense when the matters were essentially resolved through guilty pleas, and he overcharged for the judicial commitment matter. The documentary evidence also reflects that respondent charged for depositing checks, transporting vehicles, and for services not performed. Respondent also violated Rules 1.7 and 1.15, which were facilitated by his violation of Rule 5.8. The committee specifically found that respondent’s representation and Mrs. Bailey’s work as trustee were a joint effort by both, as Mrs. Bailey was at all times acting as agent, employee, wife, and co-conspirator with respondent. Finally the committee found that respondent violated Rule 8.4(c), | resulting in the overall depletion of $2,000,000 in five years. The committee further noted that, because there were no checks and balances, the trust became an ATM machine from which respondent, Mrs. Bailey, and Mr. Morris made withdrawals on a whim. Nevertheless, the committee did not find a violation of Rule 1.3 because respondent’s failures to require Mrs. Bailey to file annual accountings and income tax returns were not a result of lack of diligence but the result of the conflict of interest and failure to supervise Mrs. Bailey.
The committee then determined that the baseline sanction for respondent’s misconduct is disbarment. In aggravation, the committee found the following: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1988), and indifference to making restitution. In mitigation, the committee found full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings and imposition of other penalties or sanctions. The committee also determined that respondent’s pattern of failing to supervise Mrs. Bailey caused extensive harm.
Under these circumstances, and in light of the aggravating factors, the committee recommended that respondent be disbarred.
Respondent objected to the hearing committee’s report and recommendation, arguing that Mr. Morris was determined to have his money and concocted one scheme after another to deplete the trust.

*464
Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous as they are supported by 11()the testimony and documentary evidence. The board also determined that the committee correctly applied the Rules of Professional Conduct.
Specifically, the board found that respondent violated Rule 1.5 by charging the trust unreasonable fees on several occasions. For example, he billed the trust $9,255 from January 5, 2000 to February 9, 2000 without producing documentation to show what services he provided. Although he testified that he spent this time on Mr. Morris’ criminal matters, he was not able to identify any criminal charges filed prior to May 2000. The record also reflects that respondent billed the trust more than $11,000 for legal services after he withdrew as attorney for the trust on January 13, 2003, but his billing statements only account for 3.1 hours of work after his resignation. The record also does not corroborate or confirm respondent’s suggestion that this money was repayment for legitimate expenditures on Mr. Morris’ behalf. Additionally, respondent overcharged the trust for 10 hours of work for attending Mr. Morris’ judicial commitment hearing on December 11, 2000 when all he did was wait outside in the hall.
The board further found that respondent violated Rule 1.7 because, while he was the attorney for the trust and Mr. Morris, he had his wife appointed trustee of Mr. Morris’ trust. While Mrs. Bailey was trustee, she worked in respondent’s law office. Respondent never reviewed the bills Mrs. Bailey submitted to the trust for payment of her services as trustee, and she charged three to four times the amount charged by the Trust Company of Louisiana. Respondent billed the trust monthly for his services, and his wife, as trustee, was entrusted with reviewing those bills to ensure they were reasonable, fair, and in the best interest of Mr. Morris. Based upon the evidence in the record and respondent’s testimony, it is clear that respondent’s personal interests materially limited his representation of Mr. Morris.
With respect to Rule 1.15, the board found that respondent was not able to credibly explain why more than $4,000 in trust funds was used to pay his personal | ncredit card bill. Respondent’s documentary evidence fails to corroborate his story that the charges on his credit card were for Mr. Morris’ sole benefit. Additionally, respondent appears to have retained all of the funds paid to him for legal services that he is only partially able to prove he provided. For these reasons, the board determined that respondent violated Rule 1.15.
The board further found that respondent did not appropriately supervise Mrs. Bailey’s work as trustee. Mrs. Bailey charged the trust three or four times the amount charged by the Trust Company of Louisiana for her trustee services, and respondent never reviewed the bills she submitted for her services. Respondent should have been aware that Mrs. Bailey’s job as trustee was to preserve the trust in an effort to provide an income stream for the rest of Mr. Morris’ life. Instead, Mrs. Bailey knowingly allowed Mr. Morris to raid the principal of the trust until it was defunct. Respondent did not review his wife’s management of the trust, nor did he attempt to stop her mismanagement of the funds. Furthermore, respondent failed to advise Mrs. Bailey of her duty to file an annual accounting of the trust. As a result, there is no documentation accurately reflecting the disbursements made from the trust. Thus, the board determined that respondent violated Rule 5.3.
*465 Finally, the board additionally found that respondent violated Rule 8.4(c) because his overall conduct was dishonest, resulting in the depletion of a large trust fund belonging to an essentially disabled young man. Nevertheless, the board agreed with the committee that respondent did not violate Rule 1.3 because nothing in the record indicates he was not diligent or prompt in his representation of Mr. Morris.
The board then determined that respondent knowingly and intentionally violated duties owed to Mr. Morris. Respondent’s conduct caused substantial injury as Mr. Morris died destitute upon depleting his entire trust fund under the supervision of respondent and his wife. The board agreed with the committee that | ,2the baseline sanction is disbarment. Other than the aggravating factor of a pattern of misconduct, the board also agreed with the aggravating and mitigating factors found by the committee.
Turning to the issue of an appropriate sanction, the board determined that the heartland of respondent’s misconduct was his failure to understand and avoid the conflict of interest inherent in his representation of Mr. Morris and the trust while his wife (and employee) was trustee. Respondent essentially set up a triangular relationship between his wife, Mr. Morris, and himself, disallowing external checks and balances and failing to report to taxing authorities, accountants, Mr. Morris, or Mr. Morris’ mother. Without an accountant involved in preparing state and federal tax returns and because no accounting was rendered until after the trust was depleted, there was no way for Mr. Morris to understand the financial consequences of his actions.
Under these circumstances, and after considering case law addressing similar misconduct, the board recommended that respondent be disbarred.
Neither respondent nor the ODC filed a timely objection in this court to the disciplinary board’s recommendation. However, after the expiration of the time for filing objections under Supreme Court Rule XIX, § 11(G)(1), respondent sought to file a “late” objection. On January 25, 2013, the court issued an order rejecting respondent’s objection as untimely and, therefore, proeedurally improper but permitting the filing of briefs, without oral argument. Respondent and the ODC both filed briefs in response to the court’s order.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has-been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In this matter, the record supports a finding that respondent charged excessive fees to Mr. Morris’ trust, engaged in a conflict of interest, failed to properly supervise his wife in her duties as both his non-lawyer assistant and the trustee of the trust, converted client funds to his own use by allowing trust funds to be used to pay his personal credit card bills, and engaged in conduct involving dishonesty. Additionally, when faced with the sizeable money judgment Mr. Morris obtained against him, respondent and his wife filed for bankruptcy protection. However, the bankruptcy court determined that the judgment was non-dischargeable because respondent and Mrs. Bailey misappropriated Mr. Morris’ trust funds. Based on these facts, respondent has violated the *466 Rules of Professional Conduct as found by the hearing committee and the disciplinaiy board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to Mr. Morris, causing significant actual harm, as Mr. Morris was left destitute. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors found by the committee.
| ^Considering the weight of the aggravating circumstances present, there is no justification for any downward deviation from the applicable baseline sanction. Accordingly, we conclude the disciplinary board’s recommendation is appropriate, and we will order that respondent be disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Joseph W. Bailey, Louisiana Bar Roll number 18773, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Mr. Morris was not interdicted, but he was not employable because of his injuries. Therefore, the attorney who represented him in the class action lawsuit believed putting the settlement funds into a trust would be the best way to preserve them to ensure that Mr. Morris had a source of income for the remainder of his life.

. The trust agreement specifically names respondent as Mr. Morris’ legal representative. However, during his testimony at the formal hearing of this matter, respondent indicated this section of the trust agreement was meant to designate him as the attorney for the trust.

. During his testimony at the formal hearing of this matter, Mr. Nelson described Mr. Morris as having "very low functionality, although, he was smart enough to be very manipulative.” Mr. Nelson also indicated that Mr. Morris had anger issues and "couldn't take anybody telling him what to do.” He further stated that Mr. Morris made it clear within thirty days of the creation of the trust that his goal was to break the trust because he wanted access to all of his money. In fact, Mr. Morris informed him that respondent’s legal services were intended "to help him bust the trust.” At one point, Mr. Morris told Mr. Nelson that he was going to "run his truck through the front of our building and take us all out.” Finally, Mr. Nelson stated that Mr. Morris had issues with drug addiction.

. Respondent resigned after Mr. Morris’ ex-wife filed a disciplinary complaint against him in April 2002, alleging a conflict of interest. The record does not indicate what became of this complaint, but after resigning as the attorney for the trust, respondent continued to represent Mr. Morris in criminal matters.

. The formal charges allege a violation of Rule 5.5 (engaging in the unauthorized practice of law) but describe the rule violation as "failure to supervise a non-lawyer employee.” Given the factual allegations of the formal charges and the ODC's description of the violation in the formal charges, we believe this was a typographical error, and that the ODC intended to charge respondent with a violation of Rule 5.3.